IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CRYSTAL GRAVELY, )
 )
        Plaintiff, )
    v. ) 1:21CV882
 )
KILOLO KIJAKAZI, )
Acting Commissioner of Social Security, )
 )
        Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Crystal Gravely ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on February 20, 2020, alleging a disability onset date of January 10, 2020 in both applications. (Tr. at 15, 212-18.)[1] Her applications were denied initially (Tr. at 70-93, 136-43) and upon reconsideration (Tr. at 94-135, 146-54). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at. 157-58) On April 14, 2021, Plaintiff, along with

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8]. Plaintiff's SSI application does not appear as part of this record. However, the omission has no practical bearing on Plaintiff's claims.

her attorney, attended the subsequent telephonic hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 15.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 26), and on September 14, 2021, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Degenerative disc disease; lumbar radiculopathy; trochanteric bursitis of the left hip; coronary artery disease, status post myocardial infarction; asthma; obesity[;] and depression[.]

(Tr. at 17.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 18-20.) The ALJ therefore assessed Plaintiff's RFC and determined that she could perform sedentary work with the following, non-exertional limitations:

> [she] can occasionally climb[] ramps and stairs but can never climb ladders, ropes and scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can occasionally work in and around dust, odors, fumes and pulmonary irritants. She can never work at unprotected heights or around moving mechanical parts. [Plaintiff] requires the use of an assistance device (such as a cane or rollator walker) to walk and to balance. She can perform simple and routine tasks and can maintain attention, concentration and persistence to perform such tasks at a non-production rate pace, meaning no

5

>assembly line type or quota based work. She can occasionally interact with supervisors, coworkers and the public. [Plaintiff] can adapt to infrequent changes in work routine.

(Tr. at 20-21.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that all of Plaintiff's past relevant work exceeded her RFC. (Tr. at 24-25.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 25-26.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 26.)

Plaintiff now raises four challenges to the ALJ's decision. First, she contends that the ALJ "erred by failing to perform a proper function-by-function analysis of Plaintiff's ability to sit, stand and walk when formulating the [RFC.]" (Pl.'s Br. [Doc. #14] at 1.) Second, Plaintiff argues that the ALJ erred at step five of the sequential analysis by failing "to identify and obtain a reasonable explanation for the apparent conflict between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT")." (Pl.'s Br. at 1.) In her final two contentions, Plaintiff raises broad procedural challenges, arguing (1) that the structure of the Social Security Administration ("SSA") is constitutionally invalid, and (2) that the ALJ's appointment violates the Appointments Clause. (Pl.'s Br. at 1.) As discussed below, the Court concludes that remand is required on Plaintiff's first challenge, and the Court therefore need not reach the remaining contentions.

In her first challenge, Plaintiff argues that, in assessing her RFC, the ALJ erred by failing to perform a function-by-function evaluation of evidence relating to Plaintiff's abilities to sit, stand, and walk, despite persuasive medical opinion evidence suggesting greater limitations.

6

As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Social Security Ruling 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. at 636 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the

ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Id. at 637.

Here, as set out above, Plaintiff challenges the ALJ's analysis of evidence relating to Plaintiff's ability to sit, stand, and walk. Because Plaintiff's RFC restricts her to a limited range sedentary work, her primary contention focuses on evidence suggesting that she would experience difficulty sitting for extended periods of time. As she correctly notes, the regulations define sedentary work as involving standing and walking for up to two hours per eight-hour workday, with the remaining time spent sitting.

As acknowledged by the ALJ,

> [Plaintiff] reported a history of chronic back pain that affects her ability to stand and walk for extended periods of time. Images showed mild multilevel degenerative changes in the lumbar spine with sacralization of the L5 vertebral body. In February 2020, treating providers suggested she engage in daily walks for exercise with her husband, which required a great deal of exertion. In June 2020, treating providers noted her range of motion and strength throughout the musculoskeletal system was "without evidence of significant impairment" and she had no concerning joint erythema, warmth, or swelling. The following month, in July 2020, she had some limited range of motion in the back but straight leg raising tests were negative. In December 2020, she sought emergency treatment due to a "pop" in her back that caused symptom exacerbation. She was referred to physical therapy and given as rollator assistive device to improve walking tolerance and to improve mobility. Recent treatment notes indicate that [Plaintiff] demonstrated antalgic gait and restricted range of motion but retained normal strength, intact sensation, and normal, coordinated tandem gait with no signs of deformity, or hypertrophy.

(Tr. at 21-22) (internal citations omitted). As a result of Plaintiff's impairments, the ALJ "[found] it reasonable that [Plaintiff] would have difficulty with prolonged sitting, standing or

walking" and therefore limited her "to a range of sedentary exertion work" with "the use of [an] assistive device for walking and balancing." (Tr. at 22.)

However, as noted by Plaintiff, the ALJ did not further address how Plaintiff's difficulty with prolonged sitting would impact her ability to do sedentary work requiring 6 hours of sitting per day. In her hearing testimony, Plaintiff testified that she could not sit more than five minutes without moving around or changing positions. She also testified that even when sitting, she could not control her bladder because she could not feel when she needed to urinate, and therefore she wore adult diapers all the time, even at home. (Tr. at 52.) She testified that she had to change the diapers more than five times per day and that she gets very badly embarrassed when it happens if she goes out. (Tr. at 52.) The medical record similarly notes reports of urinating on herself or trouble urinating due to lower extremity weakness, with a diagnosis of urinary incontinence in connection with slowed mobility and back pain and numbness. (Tr. at 553, 554, 621, 803, 869, 877, 909, 920, 921, 923, 926, 934-35.)[4] These records also reflect her severely limited range of motion, severe lower back pain, numbness and diminished sensation "throughout the entire right lower extremity", and antalgic limping gait with a high fall risk. (Tr. at 802-04, 838, 909, 913, 924, 938.)

In Dowling, the Fourth Circuit held that remand was required where the ALJ failed to discuss the extent to which the claimant's problems with sitting impacted her ability to perform sedentary work because "assessing Appellant's ability to sit is critically relevant to determining her disability status, as she likely would have been deemed incapable of performing sedentary

---

[4] The UNC Spine Center and related physical therapist notes reflect Plaintiff's urinary incontinence beginning mid-2020, and her urinary incontinence was included as a clinical indicator supporting her lumbar spine MRI in November 2020. (Tr. at 920, 921, 923, 926, 934-35.)

9

work if the ALJ had found that, in addition to not being able to lift, carry, stand, stoop, balance, and climb stairs or ramps, she was not able to sit for a prolonged period of time." Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 389 (4th Cir. 2021). The Fourth Circuit noted that in that case

> the ALJ apparently concluded that Appellant was not restricted in her ability to sit, as he did not indicate that her RFC was limited because of those problems. This conclusion should have been the result of an analysis that was separate from the ALJ's appraisal of Appellant's ability to perform other functions, and should have been accompanied by "a narrative discussion describing" the evidence supporting it.

Id. In addition, the Fourth Circuit further concluded that remand was required because the ALJ failed to address the claimant's incontinence, and the need to change soiled pads, and "how that restriction impacted her ability to work." Id. at 389.

Similarly in the present case, the ALJ did not address at all Plaintiff's limitations on sitting for extended periods, nor did he address her incontinence and its impact on her ability to work even in a sedentary position. The ALJ credited Plaintiff's claims that her degenerative disc disease and lumbar radiculopathy required use of a walker, and the ALJ specifically concluded that Plaintiff "would have difficulty with prolonged sitting." (Tr. at 22.) The Court is left to speculate how the ALJ reconciled those findings with the RFC for sedentary work. The ALJ did not mention or discuss Plaintiff's testimony that she could not sit more than five minutes at a time, nor did the ALJ otherwise address or mention any limitations on sitting. Further, it is unclear whether the ALJ considered the related incontinence at all, since it is not mentioned in the decision even though it was a significant part of Plaintiff's testimony and was reflected repeatedly in the medical records. In the circumstances, given the Fourth

Circuit's direction in the similar scenario in Dowling, the Court concludes that remand is necessary so that these issues can be addressed by the ALJ in the first instance.[5]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #17] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #13] should be GRANTED.

This, the 2nd day of March, 2023.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[5] Defendant contends that remand is not necessary because the vocational expert testified that all of the representative occupations could accommodate a sit/stand option at five-minute intervals, essentially rendering any error harmless. However, Plaintiff argues that this testimony of the vocational expert conflicts with the job requirements set out in the DOT in violation of the Fourth Circuit's holding in Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015). In Pearson, the Fourth Circuit recognized that an ALJ has an affirmative "duty to make an independent identification of apparent conflicts" between vocational expert testimony and the provisions of the DOT, and if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Id. at 209-11; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016). Here, the vocational expert identified the jobs of semiconductor bonder (DOT 726.685-066, 1991 WL 679631), stringing-machine tender (DOT 689.585-018, 1991 WL 678364), and table worker (DOT 739.687-182, 1991 WL 680217). (Tr. at 25-26, 61-62.) The vocational expert further testified that for someone like Plaintiff who required a walker for walking and for balance while standing, the available jobs for each of the three identified occupations "would be reduced by approximately 30%" due to Plaintiff's use of an assistive device. (Tr. at 25-26, 60-62, 63-65.) The hypothetical inquiry to the vocational expert did not explicitly incorporate a sit/stand option, but in response to questioning from Plaintiff's counsel, the vocational expert said that the identified jobs would all allow for a sit/stand option. (Tr. at 64.) However, Plaintiff contends that the ALJ never properly reconciled how Plaintiff could perform the frequent handling and fingering required of those positions if she were standing, since the ALJ found that she required an assistive device for balancing while standing. In this regard, it is not clear how Plaintiff could perform frequent handling and fingering if she were standing with both hands on the walker as required for balance. The ALJ did not address or resolve that issue since the ALJ did not include the sit/stand option. In the circumstances and given these additional issues, the Court can't conclude that the ALJ's failure to address Plaintiff's sitting limitations is harmless. In any event, it is for the ALJ to determine and address in the first instance, not the Court.